1
2
3
4
5
6
7                **IN THE UNITED STATES DISTRICT COURT**

8            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   LUIS M. ESPARZA, et al.,               CASE NO. CV F 10-1079 LJO JLT

11             Plaintiffs,          **SUMMARY JUDGMENT DECISION**
             vs.                    (Doc. 20.)

12

13   THE BURLINGTON INSURANCE
    COMPANY,

14             Defendant.
   _____/

15

16                       **<u>INTRODUCTION</u>**

17       Defendant Burlington Insurance Company ("Burlington") seeks summary judgment on plaintiffs'

18 Luis M. Esparza ("Mr. Esparza") and Esparza Enterprises, Inc. ("Esparza Enterprises") breach of

19 insurance contract and bad faith claims in the absence of Burlington's duty to defend Mr. Esparza and

20 Esparza Enterprises (collectively "plaintiffs") in an underlying action arising from death of an Esparza

21 Enterprises employee. Plaintiffs contend that Burlington improperly applied a commercial general

22 liability policy endorsement to deny their claim arising from Esparza Enterprises' agreement to

23 indemnify its customer. This Court considered Burlington's summary judgment motion on the record[1]

24 _____

25      [1]     This Court carefully reviewed and considered the record, including all evidence, arguments, points and
authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed
26 by the parties. Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the
effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed,
27 considered and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does
not rule on objections in a summary judgment context, unless otherwise noted.

28

1

1  without a hearing, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court GRANTS

2  Burlington summary judgment.

3  **BACKGROUND**[2]

4  **Summary**

5  Burlington issued Esparza Enterprises a commercial general liability policy ("Burlington

6  policy"), effective during 2008, and denied as specifically excluded coverage for an underlying action

7  arising from the death of an Esparza Enterprises employee.  Plaintiffs claim that they were not properly

8  alerted to an endorsement upon which Burlington relies and reasonably expected coverage for the

9  underlying action.  As such, plaintiffs pursue breach of insurance contract and bad faith claims, and

10  Burlington contends that the claims fail in the absence of its duty to defend plaintiffs.

11  **Underlying Action**

12  Jorge Herrera ("Mr. Herrera") was an employee of Esparza Enterprises, a farm labor contractor.

13  On July 10, 2008, when working for Esparza Enterprises at Vignolo Farms, Inc. ("Vignolo Farms"), Mr.

14  Herrera suffered heat stroke which caused his death.  Burlington notes that Mr. Herrera suffered heat

15  stroke when loading boxes of grapes onto a truck.  Plaintiffs agree that Mr. Herrera "was involved with

16  loading grapes onto a truck" on the day he suffered heat stroke but contend that other factors contributed

17  to his death, including inadequate precautions or equipment for timely medical care or to summon

18  emergency medical care.

19  On March 11, 2009, Mr. Herrera's wife, for herself and their two sons, filed a Kern County

20  Superior Court action against Vignolo Farms ("underlying action") to allege claims for personal injury,

21  property damage, wrongful death, general negligence, and negligent entrustment of trucks and equipment

22  to Esparza Enterprises in conscious disregard of Mr. Herrera's safety.  In the underlying action, Mr.

23  Herrera's widow and sons sought recovery for hospital and medical expenses, loss of consortium and

24  support, and compensatory, general and punitive damages.

25  ---

26  [2]       The factual recitation is derived generally from the parties' joint statement of undisputed facts.  Plaintiffs filed "additional material facts" to oppose summary judgment.  The additional material facts are argument, legal conclusions,

27  overbroad generalities or speculation and make no attempt to delineate "facts" supported with evidence.  The purported additional material facts improperly rely primarily on plaintiffs' responses to Burlington's discovery requests.  This Court chiefly ignores plaintiffs' additional material facts and ADMONISHES plaintiffs' counsel that such additional material facts

28  are improper to oppose summary judgment and will not be tolerated in the future.

On August 25, 2009, Vignolo Farms filed in the underlying action a cross-complaint against Mr. Esparza dba Esparza Enterprises for express contractual indemnity in that Esparza Enterprises was a subcontractor and supplier of labor, services and equipment to Vignolo Farms, pursuant to a Farm Labor Contractor Services Agreement ("contractor agreement").  Vignolo Farms claimed that the contractor agreement bound Esparza Enterprises to defend and indemnify Vignolo Farms against the claims of Mr. Herrera's widow and sons in the underlying action.

On September 2, 2010, Vignolo Farms' cross-complaint proceeded to a bench trial.  On September 15, 2010, the court ruled in Vignolo Farms' favor on its cross-complaint for express contractual indemnity.  On January 7, 2011, the underlying action proceeded to a bench trial, and judgment was entered for nearly $735,000 in favor of Mr. Herrera's widow and sons.

**Denial Of Plaintiffs' Claim For Coverage**

On September 22, 2009, Burlington received the Vignolo Farms' cross-complaint against Esparza Enterprises and contends that it investigated Esparza Enterprises' claim for coverage. Burlington's October 21, 2009 letter denied Esparza Enterprises' tender of its defense and indemnity of the underlying action.

**The Prior Admiral Insurance Policy And Plaintiffs' Claims**

Admiral Insurance Company had issued Esparza Enterprises a commercial general liability policy ("Admiral policy"), effective during 2007.  Plaintiffs' operative complaint ("complaint") in this action notes that the Admiral policy included an exclusion for "contractual liability" but that there was an express exception to the contractual liability exclusion for claims arising out of liability "assumed in a contract or agreement that was defined as 'an insured contract.'"  The complaint further notes that the Admiral policy defined "insured contract" as "that part of any contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for 'bodily injury' or 'property damage' to a third person or organization."  According to the complaint, the Admiral policy contained an exclusion for "bodily injury" to employees to which there was an exception for "liability assumed by the insured under an 'insured contract.'"  The complaint alleges that plaintiffs understood that based on the Admiral policy, plaintiffs would be covered for a claim arising from Esparza Enterprises' agreement to indemnify a customer, even if the claim involved injuries to an Esparza Enterprises employee.

1   The complaint alleges that when Esparza Enterprises entertained Burlington's quote for the

2   Burlington policy, Burlington never alerted Esparza Enterprises to an absence of coverage for indemnity

3   claims against Esparza Enterprises although Burlington was obliged to do so. The complaint alleges that

4   Esparza Enterprises reasonably expected that the Burlington policy would include coverage for express

5   indemnity claims arising out of injuries to Esparza Enterprises' employees. The complaint concludes

6   that since claims against plaintiffs in the underlying action arise out of an express indemnity agreement

7   which qualified as an "insured contract" under the Burlington policy, plaintiffs are entitled to defense

8   and indemnification under the Burlington policy.

9       The complaint's (first) breach of written contract claim alleges that Burlington breached the

10  Burlington policy by refusing to defend and indemnify plaintiffs in the underlying action. The

11  complaint's (second) breach of implied covenant of good faith and fair dealing claim alleges that

12  Burlington engaged in insurance bad faith by:

13      1.  Failing properly to investigate the underlying action and plaintiffs' coverage claim;

14      2.  Denying plaintiffs a defense without proper interpretation of the Burlington policy; and

15      3.  Making a coverage determination based on an unreasonable and erroneous interpretation

16          of the Burlington policy.

17  The complaint further alleges that Burlington acted with fraud, malice and oppression to subject

18  Burlington to punitive damages under California Civil Code section 3294. The complaint seeks to

19  recover plaintiffs' legal expenses incurred in the underlying action and for Mr. Esparza's emotional

20  distress.

21                          **DISCUSSION**

22                      **Summary Judgment Standards**

23      Burlington seeks summary judgment in that a Burlington policy endorsement and exclusions,

24  discussed below, preclude coverage to plaintiffs for the underlying action. Burlington further takes issue

25  that the Admiral policy would have provided plaintiffs coverage for the underlying action. Plaintiffs

26  fault Burlington's reliance on an ambiguous and inconspicuous Burlington policy endorsement to deny

27  coverage.

28      F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense

                                    4

– or the part of each claim or defense – on which summary judgment is sought."  "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the

nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case"); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).  A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact."  *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."  *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment."  *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion."  *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp.*

6

1   *v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-

2   289, 88 S.Ct. 1575, 1592 (1968)).   "The mere existence of a scintilla of evidence in support of the

3   plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

4       Before applying these standards to the facts and issues at hand, this Court will address insurance

5   policy interpretation and duties to defend and indemnify.

6                           **Policy Interpretation**

7       "Construction of an insurance policy is governed by state law."  *Humboldt Bank v. Gulf Ins. Co.,*

8   323 F.Supp.2d 1027, 1032 (N.D. Cal. 2004).   Policy interpretation "is a legal rather than a factual

9   determination."  *Congleton v. National Union Fire Ins. Co.*, 189 Cal.App.3d 51, 59, 234 Cal.Rptr. 218

10  (1987).  "While insurance contracts have special features, they are still contracts to which the ordinary

11  rules of contractual interpretation apply."  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264, 10

12  Cal.Rptr.2d 538 (1992).

13      "The California Supreme Court has established a three-step process for analyzing insurance

14  contracts with the primary aim of giving effect to the mutual intent of the parties."  *In re K F Dairies,*

15  *Inc. & Affiliates v. Fireman's Fund Ins.*, 224 F.3d 922, 925 (9th Cir. 2000) (citing *AIU Ins. Co. v.*

16  *Superior Ct.*, 51 Cal.3d 807, 821-823, 274 Cal.Rptr. 820 (1990)).   "The first step is to examine the 'clear

17  and explicit' meanings of the terms as used in their 'ordinary and popular sense.'"  *In re K F Dairies,*

18  224 F.3d at 925 (quoting *AIU Ins.*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820).   "[I]f the meaning a

19  layperson would ascribe to contract language is not ambiguous, we apply that meaning."  *AIU Ins.*, 51

20  Cal.3d at 822, 274 Cal.Rptr. 274.   "If the language of the policy is not ambiguous, then the coverage

21  inquiry ends, and the court determines coverage by applying the plain meaning of the unambiguous

22  provisions of the policy."  *Baker v. National Interstate Ins. Co.*, 180 Cal.App.4th 1319, 1327, 103

23  Cal.Rptr.3d 565 (2009).

24      If an insurance policy term is ambiguous, a court "proceeds to the second step and resolves the

25  ambiguity 'by looking to the expectations of a reasonable insured.'"  *In re K F Dairies*, 224 F.3d at 926

26  (quoting *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854, 875, 21

27  Cal.Rptr.2d 691 (1993)).   "Under California law, an insurance policy provision is 'ambiguous when it

28  is capable of two or more constructions both of which are reasonable.'"  *In re K F Dairies.*, 224 F.3d

at 926 (quoting *Bay Cities*, 5 Cal.4th 854, 875, 21 Cal.Rptr.2d 691).  Nonetheless, "[a]mbiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms" *Highlands Ins. Co. v. Universal Underwriters Ins. Co.,* 92 Cal.App.3d 171, 175, 154 Cal.Rptr. 683 (1979).

If the ambiguity remains, "it is construed against the party who caused the ambiguity to exist." *In re K F Dairies*, 224 F.3d at 926 (citing *AIU Ins.*, 51 Cal.3d at 822, 274 Cal.Rptr. 280).  "In the insurance context, this almost always is the insurer, as the California Supreme Court has held that ambiguities are generally resolved in favor of coverage . . . and that the courts are to 'generally interpret the coverage clauses of insurance policies broadly, protecting objectively reasonable expectations of the insured.'" *In re K F Dairies*, 224 F.3d at 926 (quoting *AIU Ins.*, 51 Cal.3d at 822, 274 Cal.Rptr. 280).  "If two or more interpretations are reasonable, we must adopt the interpretation that favors coverage." *Hanson By and Through Hanson v. Prudential Ins. Co. of America*, 783 F.2d 762, 764 (9th Cir. 1985).

"The interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function unless the interpretation turns on the credibility of extrinsic evidence." *American Alternative Ins. Corp. v. Superior Court*, 135 Cal.App.4th 1239, 1245, 37 Cal.Rptr.3d 918 (2006).  However, if contract interpretation rests on credibility of conflicting extrinsic evidence, such issue is for the trier of fact:

> As trier of fact, it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract. (*Medical Operations Management, Inc. v. National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 891-892 & fn. 4 [222 Cal.Rptr. 455] [where conflicting extrinsic evidence is admitted to interpret language of agreement, the proper procedure is "for the trial court to require the jury to make special findings on the disputed issues and then base its interpretation of the contract on those findings"].)

*Morey v. Vannucci,* 64 Cal.App.4th 904, 913-914, 75 Cal.Rptr.2d 573 (1998).

Fundamental rules of contract interpretation are based on the premise that interpretation of a contract must effectuate the parties' "mutual intention."  *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370 (1995).  The parties' mutual intention at the time the contract is formed governs interpretation.  Cal. Civ. Code, § 1636; *Waller*, 11 Cal.4th at 18, 44 Cal.Rptr.2d 370.  The clear and explicit meaning of contract provisions, interpreted in their ordinary popular sense, unless used by the parties in a technical sense or a special meaning is given them by usage, controls judicial interpretation.  Cal. Civ. Code, §§ 1638, 1644; *Waller*, 11 Cal.4th at 18, 44 Cal.Rptr.2d 370.

**Duties To Defend And Indemnify**

An insurer has a duty to defend an insured if the insurer becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under an insuring agreement.  *Waller*, 11 Cal.4th at 19, 44 Cal.Rptr.2d 370.  Although an insurer's duty to defend is broader than its duty to indemnify, "where there is no possibility of coverage, there is no duty to defend."  *Fire Ins. Exchange v. Abbott*, 204 Cal.App.3d 1012, 1029, 251 Cal.Rptr. 620 (1988).  Determination "whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy.  Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."  *Waller*, 11 Cal.4th at 19, 44 Cal.Rptr.2d 370; *see Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467 (1993) ("The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source.")

Although broad, the duty to defend is not unlimited and "is measured by the nature and kinds of risks covered by the policy."  *Waller*, 11 Cal.4th at 19, 44 Cal.Rptr.2d 370.  "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*.  In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*."  *Montrose Chemical*, 6 Cal.4th at 300, 24 Cal.Rptr. 467 (italics in original).  An insurer "must defend a suit which potentially seeks damages within the coverage of the policy."  *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104 (1966).  "An insurer has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend him or her against the suit based on the nature and kind of risk covered by the policy, or when the underlying suit potentially seeks damages within the coverage of the policy."  *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857, 869, 77 Cal.Rptr.2d 107 (1998).  Any doubt as to whether the duty to defend exists is resolved in the insured's favor.  *Gray*, 65 Cal.2d at 299-300, 54 Cal.Rptr. 104.

In contrast to the duty to defend, the duty to indemnify "arises when the insured's underlying liability is established. . . . Although an insurer may have a duty to defend, it ultimately may have no obligation to indemnify, either because no damages were awarded in the underlying action against the

insured, or because the actual judgment was for damages not covered under the policy." *Montrose*

*Chemical Corp. of Cal. v. Admiral Ins. Co.*, 10 Cal.4th 645, 659, n. 9, 42 Cal.Rptr.2d 324 (1995). An

insurer has a "duty to indemnify only where a judgment has been entered on a theory which is actually

(not potentially) covered by the policy." *Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 803,

26 Cal.Rptr.2d 391 (1994).

With these standards in mind, this Court turns to the portions of the Burlington and Admiral

policies at issue.

### Burlington Policy Exclusions

Burlington argues it did not owe coverage to plaintiffs for the underlying action due to the

Burlington policy's exclusions for employer's liability, contractual liability, and aircraft, auto and

watercraft liability. Burlington contends that the exclusions failed to invoke its duties to defend and

indemnify to defeat plaintiffs' claims.

"An insurance company has the right to limit the coverage of a policy issued by it and when it

has done so, the plain language of the limitation must be respected." *National Ins. Underwriters v.*

*Carter*, 17 Cal.3d 380, 386, 131 Cal.Rptr. 42 (1976) (quoting *Continental Cas. Co. v. Phoenix Constr.*

*Co.*, 46 Cal.2d 423, 432, 296 P.2d 801 (1956)). However, "the burden of bringing itself within any

exculpatory clause contained in a policy is on the insurer." *Executive Aviation, Inc. v. National Ins.*

*Underwriters*, 16 Cal.App.3d 799, 806, 94 Cal.Rptr. 347 (1971). "Because of the superior bargaining

power of the insurer, exceptions and exclusions in the insurance policy are strictly construed against the

insurer and liberally interpreted in favor of the insured." *Delgado v. Heritage Life Ins. Co.*, 157

Cal.App.3d 262, 271, 203 Cal.Rptr. 672 (1984). "The interpretation of an exclusionary clause is an issue

of law subject to this court's independent determination." *Marquez Knolls Property Owners Assoc., Inc.*

*v. Executive Risk Indemnity, Inc.*, 153 Cal.App.4th 228, 233-234, 62 Cal.Rptr.3d 510, 515-516 (2007).

In *Essex Ins. Co. v. City of Bakersfield,* 154 Cal.App.4th 696, 709-710, 65 Cal.Rptr.3d 1 (2007),

the California Court of Appeal explained commercial general liability policy exclusions:

> A CGL policy is intended to cover every risk that is not excluded. A CGL policy
> has a very broad insuring clause but also has numerous exclusions. . . .The "auto"
> exclusion (as well as the aircraft and watercraft exclusions) is an exclusion designed to
> limit coverage for risks normally covered by other insurance. "To cover these risks, the
> insured must purchase separate insurance." [Citation].

This Court next addresses the endorsement and exclusions on which Burlington relies.

### *Employer's Liability Exclusion*

The Burlington policy includes an employer's liability[3] exclusion which appears below:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.   We will have the right and duty to defend the insured against any "suit" seeking those damages.   However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
. . .

**2.    Exclusions**

This insurance does not apply to:

. . .

    **b.    Contractual Liability[4]**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   This exclusion does not apply to liability for damages:
. . .

        (2)    Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
. . .

---

[3]    The California Supreme Court has explained the effect of employer's liability coverage:

. . . employers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a "gap-filler," providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law. . . . Generally, these two kinds of coverage are mutually exclusive. . . . Most employers' liability policies limit coverage to liability for which the insured is held liable *as an employer.*

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 916, 226 Cal.Rptr. 558 (1986) (citations omitted; italics in original).

[4]    This Court will refer to the following subpart b. as the "contractual liability exclusion."

e.   **Employer's Liability**[5]

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a)   Employment by the insured; or

(b)   Performing duties related to the conduct of the insured's business; or

. . .

This exclusion applies:

(1)   Whether the insured may be liable as an employer or in any other capacity; and

(2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

The Burlington policy also includes an endorsement entitled "Contractual Liability Amendment" ("contractual liability amendment") which states in part:

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

**CONTRACTUAL LIABILITY AMENDMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.   Under Exclusion e. Employer's Liability of 2. Exclusions, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, SECTION I – COVERAGES, the paragraph "This exclusion does not apply to liability assumed by the insured under an "insured contract" is deleted."

2.   Definition 9. "Insured contract" of SECTION V – DEFINITIONS is replaced by the following:

9.   "Insured contract" means;

. . .

f.   That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

---

[5]   This Court will refer to the following subpart e. as the "employer's liability exclusion."

Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

. . .

(4)     That indemnifies any person or organization for "bodily injury," "property damage" or "personal and advertising injury" arising out of an "occurrence" caused by the sole negligence of said person or organization.

Burlington notes that the employer's liability exclusion excludes coverage for an employee's "bodily injury" claims and that there is an exception to the employer's liability exclusion for "liability assumed by the insured under an 'insured contract.'" Burlington further notes the contractual liability amendment deletes the "insured contract" exception to the employer's liability exclusion by stating:

Under Exclusion a. Employer's Liability of 2. Exclusions, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, SECTION I – COVERAGES, the paragraph "This exclusion does not apply to liability assumed by the insured under an "insured contract" is deleted."

In other words, Burlington contends that the contractual liability amendment deleted the "insured contract" exception to apply the employer's liability exclusion to indemnity situations.  Burlington contends that since Mr. Herrera was employed by Esparza Enterprises when he was injured, claims arising out of bodily injury to such employee are excluded under the employer's liability exclusion.

Plaintiffs offer no meaningful resistance to Burlington's application of the contractual liability amendment to the employer's liability exclusion.  As noted below, plaintiffs contend that the contractual liability amendment was inconspicuous to preclude its effectiveness.  On the issue of interpretation, this Court agrees with Burlington's application of the contractual liability amendment to the employer's liability exclusion such that an insured contract, including the contractor agreement between Esparza Enterprises and Vignolo Farms, is not excepted from the employer's liability exclusion which effectively precludes plaintiffs' coverage for the underlying action.  Plaintiffs' reasonable expectations as to the employer's liability exclusion are irrelevant with plaintiffs' failure to demonstrate ambiguity of the Burlington policy, in particular, the contractual liability amendment.

/ / /

***Contractual Liability Exclusion***

13

Burlington notes that the contractual liability exclusion excludes coverage for "bodily injury" to which an insured is obligated to pay damages due to assumed liability in a contract.  Burlington points to an exception to the contractual liability exclusion for liability assumed in an "insurance contract." Burlington further notes that the contractual liability amendment defines "insured contract" as "[t]hat part of any contract or agreement pertaining to your business . . . under which you assume tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Burlington continues that the contractual liability amendment excepts from the definition of "insured contract" a contract which "indemnifies any person or organization for 'bodily injury' . . . arising out of an 'occurrence' caused by the sole negligence of said person or organization."

Burlington argues that the contractor agreement between Esparza Enterprises and Vignolo Farms fits in the exception to an "insured contract" under the contractual liability amendment in that the underlying action alleged negligence and negligent entrustment claims against Vignolo Farms based solely on the conduct of Vignolo Farms, not Esparza Enterprises.  Burlington concludes that Esparza Enterprises was substituted as defendant for Vignolo Farms due to the contractor agreement to invoke the contractual liability exclusion, without application of the "insured contract" exception.

Similar to the employer's liability exclusion, plaintiffs offer no meaningful resistance to Burlington's application of the contractual liability amendment to the contractual liability exclusion. Plaintiffs focus on the inconspicuousness of the contractual liability amendment. This Court agrees with Burlington that the contractual liability amendment's definition of "insured contract" excepts the contractor agreement between Esparza Enterprises and Vignolo Farms as an "insured contract" to invoke the contractual liability exclusion and thus preclude coverage for the underlying action.  Plaintiffs' reasonable expectations as to the contractual liability exclusion are irrelevant with plaintiffs' failure to demonstrate ambiguity of the Burlington policy, in particular, the contractual liability amendment.

### *Aircraft, Auto Or Watercraft Exclusion*

The Burlington policy contains an endorsement entitled "Amendment – Aircraft, Auto Or Watercraft Exclusion" ("auto exclusion"), which states in part:

**g.      Aircraft, Auto Or Watercraft**

This insurance does not apply to:

14

. . .

(2)    "Bodily injury" or "property damage" arising out of any "auto".

(3)    The "loading or unloading" of any aircraft, "auto" or watercraft.

This exclusion applies to "bodily injury" or "property damage" arising out of any aircraft, "auto" or watercraft, whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others or provided to another by any insured.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.

Burlington notes that the auto exclusion excludes coverage for "bodily injury" arising out of the use of an "auto" and "loading or unloading" of property defined as "handling of property" "[a]fter it is moved from the place where it was accepted for movement into or onto an . . . auto." "California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal.App.4th 321, 328, 81 Cal.Rptr.2d 557 (1999).

Burlington concludes that the auto exclusion excludes coverage for the underlying action in that Mr. Herrera undisputedly was injured when loading grape boxes onto a truck.

Plaintiffs argue that triable issues of material fact preclude application of the auto exclusion in that inadequate precautions or equipment for timely medical care given the "extreme heat conditions" contributed to Mr. Herrera's death.  Plaintiffs note that the "proximate cause" approach applies when "an accident results from the concurrence of independent causes." Plaintiffs explain that the "substantial factor" test "determines liability insurance coverage when covered and excluded events have concurred in causing bodily injury."  Plaintiffs argue that since the underlying action involved two or more independent causes which combined to harm Mr. Herrera, liability was not established solely from "the loading and unloading of any vehicle."

"[C]overage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply a concurrent proximate cause of the injuries.  That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction

15

of injury does not nullify any single contributory act." *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 104-105, 109 Cal.Rptr. 811 (1973).  When multiple acts or events "constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." *Partridge*, 10 Cal.3d at102, 109 Cal.Rptr. 811.

The parties agree that Mr. Herrera loaded trucks on the day he suffered heat stroke.  Plaintiffs contend that inadequate heat precautions contributed to Mr. Herrera's death.  However, plaintiffs point to no Burlington policy provisions to invoke coverage for inadequate heat precautions, which appear as the obligation of Vignolo Farms for which Esparza Enterprises indemnified Vignolo Farms.  Plaintiffs offer no facts to pinpoint when Mr. Herrera suffered heat stroke, that is, whether he suffered heat stroke when unloading trucks or at a different time.  Based on the record, Burlington is correct that "regardless of the ultimate determined legal cause of Mr. Herrera's death, it indisputably arose out of the loading of a vehicle."  The auto exclusion further supports lack of coverage for the underlying action.

### Conspicuous, Plain And Clear Exclusions

Burlington argues that the contractual liability amendment is conspicuous, plain and clear and thus was readily apparent to plaintiffs.  Plaintiffs disagree and argue that the employer's liability and contractual liability exclusions would not have precluded coverage "but for" the "inconspicuous" contractual liability amendment "tucked away and hidden" in the middle of the Burlington policy.

### *Conspicuousness*

"Coverage may be limited by a valid endorsement. . . . But to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.'" *Haynes v. Farmers Ins. Exchange*, 32 Cal.4th 1198, 1204, 13 Cal.Rptr.3d 68 (2004).  "The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." *Haynes*, 32 Cal.4th at 1204, 13 Cal.Rtpr.3d 68. To determine conspicuousness, a court must look to "how a coverage-limiting provision actually has been positioned and printed within the policy at issue." *Haynes*, 32 Cal.4th at 1209, 13 Cal.Rptr.3d 68.  An "exclusion must be positioned in a place and printed in a form which would attract a reader's attention." *Ponder v. Blue Cross of So. Cal.*, 145 Cal.App.3d 709, 719, 193 Cal.Rptr. 632 (1983).

Conspicuous means so written, displayed or presented that a reasonable person against whom

a term operates ought to have noticed it.  Conspicuous terms include a heading in capitals, language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size or set off from the surrounding text of the same size by symbols or other marks that call attention to the language.  *Broberg v. Guardian Life Ins. Co. of America*, 171 Cal.App.4th 912, 922-923, 90 Cal.Rptr.3d 225 (2009). In sum, "[t]o be enforceable, a policy provision limiting coverage otherwise reasonably expected under the policy must be so drafted that a reasonable purchaser of insurance would have both noticed it and understood it."  *Hervey v. Mercury Cas. Co.*, 185 Cal.App.4th 954, 966, 110 Cal.Rptr.3d 890 (2010) (citation omitted).

To support conspicuousness of the contractual liability amendment, Burlington notes that the Burlington policy's second page entitled "Listing of Forms and Endorsements" references the contractual liability amendment. Burlington characterizes the contractual liability amendment as "part of the policy from the inception" and notes its top of the page warning: "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  Burlington points out that the contractual liability amendment references its modification to the "Commercial General Liability Coverage Part" to further render the contractual liability amendment as conspicuous.

Burlington further argues that "a reasonable insured would clearly not expect a commercial general liability policy such as this one to provide workers' compensation or employer's liability coverage" given that California Insurance Code section 108(a) defines liability insurance to cover "loss resulting from liability for injury, fatal or nonfatal, suffered by any natural person . . . but does not include worker's compensation."  Burlington explains that the Burlington policy expressly excludes coverage for employer's liability and workers' compensation and that the contractual liability amendment deletes an exception to the employer's liability exclusion for "liability assumed by the insured under an 'insured contract.'"

Plaintiffs claim the contractual liability amendment was "unbeknownst" to them given that a standard commercial general liability policy excepts an "insured contract" from an employer's liability exclusion.  Plaintiffs argue that the contractual liability amendment "was not within the expectations of a reasonable insured" and that the title "Contractual Liability Amendment" would not "alert a reasonable insured to what Burlington was attempting to do," that is, to remove an indemnity contract from the

17

"insured contract" exception to an employer's liability exclusion.   Plaintiffs contend that the "Contractual Liability Amendment" title "does not alert a reasonable insured to the fact that it pertains to the Employer Liability exclusion."

Plaintiffs further fault the contractual liability amendment's effect on the contractual liability exclusion in that contractual liability amendment is "tucked into the middle of the policy" and eliminates indemnity agreements from the Burlington policy's definition of insurance contract.  Plaintiffs argue that the contractual liability amendment "inconspicuously" adds language to the Burlington policy's definition of "insured contract."

Burlington responds that only two parts of the commercial general liability coverage form "deal with contractual liability," that is, the contractual liability exclusion and the exception to the employer's liability exclusion for liability assumed in an insured contract.  Burlington continues that the contractual liability amendment changes the nature of exceptions for "third party contracts with the insured" to render the contractual liability amendment "appropriately titled" to alert "an important change in coverage with regards to precisely the kind of obligations plaintiffs contend they consider important."

The Burlington policy's second page is a "Listing of Forms and Endorsements."  The contractual liability amendment is listed under the listing Commercial General Liability endorsements.  The second page admonishes: "THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY."   The one-page contractual liability amendment appears at page 45 of the 69-page Burlington policy.  The contractual liability amendment is clearly marked and clearly references "insured contract."   The contractual liability amendment mentions deletion of the exception to the employer's liability exclusion and provides boldface references to the portion of the Burlington policy at issue.  The contractual liability amendment admonishes that it changes the policy and to "read it carefully."   Plaintiffs fail to demonstrate that the contractual liability amendment is inconspicuous to negate its effectiveness.

### Bringing To Attention

Perhaps realizing the weakness of their inconspicuous points, plaintiffs hold Burlington to "an affirmative obligation to bring to the policyholder's attention provisions which would restrict coverage in a manner inconsistent with a policyholder's expectation."

1      The duty to read "is insufficient to bind a party to unusual or unfair language unless it is brought

2  to the attention of the party and explained." *Fields v. Blue Shield of California,* 163 Cal.App.3d 570,

3  578, 209 Cal.Rptr. 781(1985).  "Essentially, the issue whether an insured has a duty to read his policy

4  and whether in not reading his policy he is, nonetheless, bound by its terms, is a complex one and not

5  one that can be stated baldly without an analysis of the surrounding facts." *Paper Savers, Inc. v. Nacsa*,

6  51 Cal.App.4th 1090, 1105, 59 Cal.Rptr.2d 547 (1996).

7      Plaintiffs argue that "Burlington never alerted or drew attention to any provision of the

8  Burlington policy . . . which would eliminate basic and standard coverage of indemnity claims."

9  Plaintiffs point to the failure of the Burlington policy's declarations page to limit coverage "for liability

10  arising out of indemnity claims."  Without citing authority, plaintiffs assert that Burlington knew of its

11  obligation to alert plaintiffs of limitations or restrictions if plaintiffs "would not have reasonably

12  expected such limitations or restrictions to be included within the Burlington policy."

13      Plaintiffs fail to support their notion that Burlington was obliged to notify them of the contractual

14  liability amendment other than as it appears and is referred to in the Burlington policy.  Plaintiffs offer

15  no admissible evidence of reasonable expectations of an insured, let alone themselves.  Plaintiffs point

16  to no authority that a declarations page is required to include limitations on coverage, such as the

17  contractual liability amendment.  Plaintiffs attempt to hold Burlington to unqualified standards without

18  citation to supporting evidence or law.

19                                            ***Plain And Clear***

20      Burlington notes that the "plain and clear" requirement for an exclusion is separate from the

21  "conspicuous" requirement.  Burlington contends the contractual liability amendment is plain and clear

22  in the absence of legal or technical terms to require "special knowledge."

23      "To be plain and clear, the substance of the exclusion must be precise and understandable."

24  *Travelers Ins. Co. v. Lesher*, 187 Cal.App.3d 169, 184, 231 Cal.Rptr. 791 (1986).  The "substance of

25  the exclusion must be stated in words that convey the proper meaning to persons expected to read the

26  contract."  *Ponder*, 145 Cal.App.3d at 719, 193 Cal.Rptr. 632.  "To be effective in this context, the

27  exclusion must be couched in words which are part of the working vocabulary of average lay persons."

28  *Ponder*, 145 Cal.App.3d at 723, 193 Cal.Rptr. 632.

1   Burlington notes that the contractual liability amendment includes the heading: "This

2   endorsement modifies insurance provided under the following: COMMERCIAL GENERAL

3   LIABILITY COVERAGE PART."   Burlington further notes that below the heading the following

4   appears:

5       Under Exclusion e. Employer's Liability of 2. Exclusions, COVERAGE A BODILY
        INJURY AND PROPERTY DAMAGE LIABILITY, SECTION 1 – COVERAGES, the
6       paragraph "This exclusion does not apply to liability assumed by the insured under and
        "insured contract" is deleted."
7

8   Burlington argues that since the Burlington policy includes only a commercial general liability coverage

9   part, "there is no possible confusion over what was being amended and none of the words in the

10  endorsement are beyond the working vocabulary of the average layperson."   Burlington continues that

11  the contractual liability amendment is neither verbose, ambiguous nor "buried in a sea of technical

12  words."

13  As noted above, plaintiffs offer nothing meaningful to challenge Burlington's interpretation of

14  the employer's liability, contractual liability and auto exclusions or the contractual liability amendment.

15  Plaintiffs focus on the location of the contractual liability amendment and failure to bring it to plaintiffs'

16  attention.   Plaintiffs raise no credible points that provisions at issue are less than plain and clear.

17  Plaintiffs fail to demonstrate that the contractual liability amendment is not conspicuous, plain or clear

18  to defeat summary judgment.

19  **Admiral Policy**

20  The complaint alleges in effect that plaintiffs were entitled to rely on their prior Admiral policy's

21  employer's liability exclusion and that Burlington was required to notify plaintiffs of the Burlington

22  policy's more restrictive employer's liability exclusion arising from the contractual liability amendment.

23  Burlington argues that since its contractual liability amendment is not ambiguous, there is no need to

24  examine the Admiral policy.

25  The Admiral policy includes an endorsement entitled "Absolute Employers Liability Exclusion"

26  ("Admiral employers exclusion"), which provides:

27  **ABSOLUTE EMPLOYERS LIABILITY EXCLUSION**

28  This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of the premium charged, it is agreed that Commercial General Liability Coverage Form Section I Coverage A Exclusion e. is deleted in its entirety and replaced by the following:

e.   Employer's Liability

"Bodily injury" to:

(1)   Any "employee" of any insured arising out of and in the course of:

(a)   Employment by any insured; or

(b)   Performing duties related to the conduct of any insured's business; or

(2)   The spouse, child, parent, brother or sister of that 'employee' as a consequence of Paragraph (1) above.

This exclusion applies:

(1)   Whether any insured may be liable as an employer or in any other capacity; and

(2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

It is further agreed that Section V. Definition 9, paragraph f. is amended to include the following subparagraph (4):

(4)   Under which any insured assumes liability for 'bodily' injury to an 'employee' of any insured arising out of and in the course of employment by any insured or performing duties related to the conduct of any insured's business; or to the spouse, child, parent, brother or sister of that "employee". [("subparagraph 4")]

Burlington argues that subparagraph 4 would have excluded coverage for the underlying action if the Admiral policy was in effect at the time of Mr. Herrera's injuries in that subparagraph 4 excludes liability for bodily injury of an Esparza employee "arising out or and in the course of employment." Burlington notes that the Admiral employers exclusion applies "[w]hether any insured may be liable as an employer" and "[t]o any obligation to share damages or repay someone else who must pay damages because of injury."

Burlington further notes that coverage for the underlying action is excluded under the Admiral policy's aircraft, auto or watercraft exclusion ("Admiral auto exclusion"), which excludes coverage for

21

bodily injury arising outs of the use of an auto, including "operation and 'loading or unloading.'"

Plaintiffs fail to challenge Burlington's points regarding the Admiral policy and appear to abandon their claims regarding the Admiral policy.  The record reveals nothing to suggest that plaintiffs are entitled to coverage for the underlying action under the Burlington policy based on plaintiffs' understanding of the Admiral policy.  The complaint's allegations as to the Admiral policy are irrelevant.

### Mr. Esparza's Standing

The complaint alleges that the Burlington policy extended coverage to additional insureds by stating "your 'executive officers' and directors are insureds" and that Mr. Esparza as an executive officer of Esparza Enterprises qualifies as an additional insured under the Burlington policy.

The Burlington policy addresses an insured in the following pertinent provision:

> 1.    If you are designated in the Declarations as:
>      . . .
>
> d.    An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.

Burlington argues that Mr. Esparza lacks standing to bring this action.  Burlington argues that Mr. Esparza is named as a plaintiff in this coverage action to seek  emotional distress damages which are barred in that Esparza Enterprises is the only proper plaintiff and corporations lack standing to pursue emotional distress damages.  *See Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty,* 129 Cal.App.4th 1228, 1260, 29 Cal.Rptr.3d 521 (2005) (business entity unable to pursue intentional infliction of emotional distress and invasion of privacy claims); *Tenants Assn. of Park Santa Anita v. Southers,* 222 Cal.App.3d 1293, 1304, 272 Cal.Rptr. 361 (1990) (unincorporated tenants association lacked standing to pursue emotional distress claims for tenants).

Burlington continues that Mr. Esparza was not named as an individual cross-defendant in the underlying action in that he was named in his capacity of doing business as Esparza Enterprises.  Burlington notes that the cross-complaint in the underlying action addressed the liabilities of Esparza Enterprises, not Mr. Esparza, based on the contractor agreement with Vignolo Farms.  Burlington concludes Mr. Esparza is unable to pursue claims in his individual capacity because the cross-complaint in the underlying action did not sue him as an executive officer or director to qualify him as an insured.

1   Plaintiffs claim that Vignolo Farms' cross-complaint named Mr. Esparza personally as a cross-

2   defendant and suggested that he operated as a sole proprietorship.   Plaintiffs argue that the cross-

3   complaint contemplates Mr. Esparza's liability arising out of his activities as an Esparza Enterprises'

4   owner to qualify Mr. Esparza as an insured.

5   This Court disagrees with plaintiffs' evaluation of the Vignolo Farms' cross-complaint, which

6   merely names Mr. Esparza in his capacity of doing business as Esparza Enterprises.   The cross-

7   complaint identifies Esparza Enterprises as a corporation with reference to "Esparza Enterprises, Inc."

8   Plaintiffs offer nothing to support their notion that Esparza Enterprises was Mr. Esparza's sole

9   proprietorship.   Nothing suggests that Mr. Esparza was sued in his capacity as an executive officer or

10  director.   Based on the record, Mr. Esparza lacks standing to pursue claims as an insured under the

11  Burlington policy.

12  **Bad Faith**

13  Burlington contends that it is not subject to bad faith liability in absence of its breach of the

14  Burlington policy or withholding benefits that were due.   Burlington argues that it did not act in bad faith

15  "because its denial was reasonable."

16  "There is an implied covenant of good faith and fair dealing in every contract that neither party

17  will do anything which will injure the right of the other to receive the benefits of the agreement."

18  *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958).   The primary test

19  of breach of the implied covenant of good faith and fair dealing "is whether the insurer withheld

20  payment of an insured's claim unreasonably and in bad faith."   *Love v. Fire Ins. Exchange*, 221

21  Cal.App.3d 1136, 1151, 271 Cal.Rptr. 246 (1990).   "[B]efore an insurer can be found to have acted

22  tortiously (i.e., in bad faith), for its delay or denial in the payment of policy benefits, it must be shown

23  that the insurer acted unreasonably or without proper cause."   *Chateau Chamberay Homeowners Ass'n*

24  *v. Associated Intern. Ins. Co.*, 90 Cal.App.4th 335, 347, 108 Cal.Rptr.2d 776 (2001).   If benefits are

25  withheld for "proper cause," the implied covenant is not breached.   *Love*, 221 Cal.App.3d at 1151, 271

26  Cal.Rptr. 246; *Cal. Shoppers Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 54-55, 221 Cal.Rptr. 171

27  (1985).   To establish breach of the implied covenant, an insured must demonstrate that: (1) benefits due

28  under the policy were withheld; and (2) the reason to withhold benefits was unreasonable or improper.

23

*Love*, 221 Cal.App.3d at 1151, 271 Cal.Rptr. 246.

"It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller*, 11 Cal.4th at 36, 44 Cal.Rptr.2d 370; *see also Cal. State Auto. Assn. Inter-Ins. Bureau v. Superior Court*, 184 Cal.App.3d 1428, 1433, 229 Cal.Rptr. 409 (1986) (no bad faith award available "without first establishing coverage exists").

Moreover, "where there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute." *Chateau Chamberay*, 90 Cal.App.4th at 347, 108 Cal.Rptr.2d 776. A "breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself, and it has been held that [b]ad faith implies unfair dealing rather than mistaken judgment." *Congleton,* 189 Cal.App.3d at 59, 234 Cal.Rptr. 218 (internal quotations and citations omitted).

Burlington argues that its denial of coverage "was reasonable under a plain reading" of the Burlington policy which did not invoke Burlington's defense and indemnity duties.

Plaintiffs premise their bad faith claim on Burlington's claim handling which plaintiffs characterize as incomplete and biased. Plaintiffs note that bad faith may result from failure to investigate a claim thoroughly, failure to evaluate a claim objectively, use of improper standards to deny benefits, and deceptive practices to avoid claim payment. In addition, plaintiffs appear to rest bad faith on Burlington's failure to alert plaintiffs to the contractual liability amendment which plaintiffs characterize as "unusual and unexpected."

Burlington responds that plaintiffs' bad faith arguments are non-sensical in that plaintiffs premise alleged bad faith on an incomplete and biased investigation as well as Burlington's "unusual and unexpected" policy limitation. Burlington criticizes plaintiffs' lack of facts "to show what should have been investigated or what should have been learned that would have impacted the coverage decision." Burlington notes plaintiffs failure to connect Burlington policy language and claims handling to unreasonable withholding of benefits.

1    Burlington is correct.  The record lacks facts of Burlington's claim mishandling.  There is no

2    evidence to suggest Burlington's failure to investigate plaintiffs' claim thoroughly, failure to evaluate

3    the claim objectively, use of improper standards to deny plaintiffs benefits, or deceptive practices to

4    avoid claim payment.  Plaintiffs confuse the contractual liability amendment's application and location

5    within the Burlington policy with bad faith misconduct.  In the absence of coverage for the underlying

6    action, Burlington could not have acted in bad faith.

7    ## Punitive Damages

8    Burlington argues that plaintiffs are not entitled to punitive damages in the absence of clear and

9    convincing evidence that it "has been guilty of oppression, fraud, or malice."

10   ### *California Law In General*

11   California Civil Code section 3294 ("section 3294") provides that in an action "for breach of an

12   obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear

13   and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ.

14   Code, § 3294(a).  Section 3294(c)(1)–(3) defines:

15       1.   "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff

16          or despicable conduct which is carried on by the defendant with a willful and conscious

17          disregard of the rights and safety of others";

18       2.   "Oppression" as "despicable conduct that subjects a person to cruel and unjust hardship

19          in conscious disregard of that person's rights"; and

20       3.   "Fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact

21          known to the defendant with the intention on the part of the defendant of thereby

22          depriving a person of property or legal rights or otherwise causing injury."

23   "'Despicable conduct' to establish malice or oppression under section 3294(c) is so vile, base,

24   contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by

25   ordinary decent people."  *Mock v. Michigan Millers Mutual Ins. Co.*, 4 Cal.App.4th 306, 331, 5

26   Cal.Rptr.2d 594 (1992).  "Such conduct has been described as '[having] the character of outrage

27   frequently associated with crime.'"  *Tomaselli v. Transamerica Ins. Co.,* 25 Cal.App.4th 1269, 1287,

28   31 Cal.Rptr.2d 433 (1994) (quoting *Taylor v. Superior Court,* 24 Cal.3d 890, 894, 157 Cal.Rptr. 693,

598 P.2d 854 (1979)).

To establish malice for punitive damages a defendant must have acted "with the intent to vex, injure, or annoy, or with a conscious disregard of the plaintiff's rights." *Taylor*, 24 Cal.3d at 895, 157 Cal.Rptr. 693. "To justify an award of punitive damages on this basis [of conscious disregard], the plaintiff must establish that the defendant was aware of the probable dangerous consequences of his conduct, and that he wilfully and deliberately failed to avoid those consequences. *Taylor*, 24 Cal.3d at 895, 157 Cal.Rptr. 693. However, "punitive damage awards have been reversed where the defendant's conduct was merely in bad faith and overzealous." *Lackner v. North*, 135 Cal.App.4th 1188, 1212, 37 Cal.Rptr.3d 863 (2006).

Punitive damages are "available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294." *Hilliard v. A.H. Robbins Co.*, 148 Cal.App.3d 374, 392, 196 Cal.Rptr. 117 (1983). Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases. *Henderson v. Security Pacific National Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388 (1977).

"Punitive damages aren't available in California for simple breaches of contract, no matter how willful." *Slottow v. American Cas. Co.*, 10 F.3d 1355, 1361 (9th Cir. 1993). "Rather, the breach must have been tortious, and the breaching party must have 'been guilty of oppression, fraud, or malice.'" *Slottow*, 10 F.3d at 1361 (quoting Cal. Civ. Code, § 3294).

"'Clear and convincing' evidence requires a finding of high probability." *Mock*, 4 Cal.App.4th at 332, 5 Cal.Rptr.2d 594. The clear and convincing standard requires evidence "'so clear as to leave no substantial doubt'; 'sufficiently strong to command the unhesitating assent of every reasonable mind.'" *Mock*, 4 Cal.App.4th at 332, 5 Cal.Rptr.2d 594 (citations omitted).

### *Punitive Damages In Claims Handling Context*

"Evidence that an insurer has violated its duty of good faith and fair dealing does not thereby establish that it has acted with the requisite malice, oppression or fraud to justify an award of punitive damages." *Mock*, 4 Cal.App.4th at 328, 5 Cal.Rptr.2d 594. To establish that "an insurer's conduct has gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by clear and convincing evidence that the insurer has acted maliciously, oppressively or fraudulently." *Mock*, 4

Cal.App.4th at 328, 5 Cal.Rptr.2d 594.  Conduct required to impose punitive damages for the tortious breach of contract "is of a different dimension" than that required to find bad faith.  *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 890, 93 Cal.Rptr.2d 364 (2000).

"Where the plaintiff's ultimate burden of proof will be by 'clear and convincing' evidence, the higher standard of proof must be taken into account in ruling on a summary judgment motion." *Basich v. Allstate Ins. Co.*, 87 Cal.App.4th 1112, 1118, 105 Cal.Rptr.2d 153 (2001) (affirming summary adjudication that insurer was not subject to punitive damages for bad faith).  To meet the clear and convincing standard, "some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing." *Tomaselli,* 25 Cal.App.4th at 1288, n. 14, 31 Cal.Rptr.2d 433 (quoting *Travelers Indem. Co. v. Armstrong,* 442 N.E.2d 349, 362  (Ind. 1982)).

An insurer's unreasonable actions do not equate to malice.  *See Patrick v. Maryland Cas. Co.*, 217 Cal.App.3d 1566, 1575, 267 Cal.Rptr. 24 (1990).  For instance, punitive damages may not be imposed for an insurer's actions "found to be negligent (failing to follow up information provided by the insured), overzealous (taking an unnecessary deposition under oath of the insured), legally erroneous (relying on an endorsement which was not shown to have been delivered), and callous (failing to communicate)." *Tomaselli*, 25 Cal.App.4th 1269, 1288, 31 Cal.Rptr.2d 433.  A "consistent and unremedied pattern of egregious insurer practices' [is required] in order for the insurer's 'bad faith' conduct to rise to the level of malicious disregard of the insured's rights so as to warrant the imposition of punitive damages." *Mock*, 4 Cal.App.4th at 329, 5 Cal.Rptr.2d 594 (1992) (citations omitted).

Burlington notes that punitive damages rest on plaintiffs' bad faith claim which "cannot survive because Burlington had a reasonable and proper basis for denying the claim."  Burlington argues that plaintiffs are unable to support punitive damages "entirely upon Burlington's decision to deny coverage" in that such decision does not constitute malice, oppression or fraud.  Burlington further challenges plaintiffs' ability to present despicable conduct that could be considered malicious, oppressive, or fraudulent.

Plaintiffs assert a punitive damages claim in that "Burlington deliberately applied an unduly restrictive interpretation of the policy, and denied coverage without conducting a full and fair

27

1   investigation."

2          Plaintiffs rest punitive damages on the same unsubstantiated grounds on which they assert bad

3   faith.  As demonstrated above, plaintiffs' bad faith claim fails.  In turn, plaintiffs' punitive damages faith

4   claim fails, especially given the absence of clear and convincing evidence to raise even an inference that

5   Burlington acted with malice, oppression or fraud in any way surrounding the Burlington policy or

6   handling plaintiffs' claim.

7                                       **CONCLUSION AND ORDER**

8          For the reasons discussed above, this Court:

9          1.     GRANTS Burlington summary judgment;

10         2.     DIRECTS the clerk to enter judgment in favor of defendant The Burlington Insurance

11                Company and against plaintiffs Luis M. Esparza and Esparza Enterprises, Inc. and to

12                close this action; and

13         3.     VACATES the October 25, 2011 pretrial conference and December 12, 2011 trial.

14         IT IS SO ORDERED.

15  **Dated:    August 5, 2011**                        /s/ Lawrence J. O'Neill
16                                              UNITED STATES DISTRICT JUDGE

28